OPINION. Black, Judge: As was mentioned in our preliminary statement, the Commissioner in his deficiency notice determined a deficiency of $140,104.59 in petitioner’s income tax for the year 1940; a deficiency of $9,638.08 in petitioner’s declared value excess profits tax for that year; and a deficiency of $167,710.48 in petitioner’s excess profits tax for that year. The petitioner did not appeal from this determination. Its counsel stated at the hearing that petitioner’s expenditures in 1940 for the purposes involved in the issues for 1941 and 1942 were relatively unimportant, and that the deficiencies for 1940 resulted mainly from adjustments which petitioner did not contest and, therefore, no appeal was taken from the determination of the Commissioner for that year. Thus we have only the years 1941 and 1942 before us. We first consider petitioner’s assignments of error (a) and (c) set out in our opening statement. For the year 1942 there is a slight discrepancy between the pleadings and the proof. The evidence shows that in 1942 petitioner expended $199,154.33 in connection with ground subsidences and not $199,217.34, as alleged in the petition. The respondent’s determination is, of course, sustained as to the difference of $63.01. Petitioner contends that the amounts of $734,316.76 for 1941 and $199,154.33 for 1942 are deductible as ordinary and necessary business expenses under section 23 (a) (1) (A) of the Internal Revenue Code.[1] The respondent contends that the items for which these amounts were expended come within section 24 (a) (2) and (3) of the Internal Revenue Code[2] and are not deductible. The applicable regulations are Regulations 103 and 111. The material provisions of Regulations 111, which are substantially the same as those of Regulations 103, are set forth in the margin.[3] In deciding whether the expenditures of $734,316.70 in 1941 and $199,154.33 in 1942 may be classed as expenses of the business, as petitioner contends, or whether they were expended in the acquisition of capital assets, as respondent contends, we think it is appropriate to consider the purpose, the physical nature, and the effect of the work for which the expenditures were made. In connection with the purpose of the work, the Proctor program was intended to avert a plant-wide disaster and avoid forced abandonment of the plant. The purpose was not to improve, better, extend, or increase the original plant, nor to prolong its original useful life. Its continued operation was endangered; the pur^pse of the expenditures was to enable petitioner to continue the plant in operation not on any new or better scale, but on the same scale and, so far as possible, as efficiently as it had operated before. The purpose was not to rebuild or replace the plant in whole or in part, but to keep the same plant as it was and where it was. Those expenditures, amounting to $153,474.20 in 1941 and $79,687.29 in 1942, which looked to replacing parts of the plant were capitalized by petitioner and are not here involved. In connection with the physical nature of the work, the drilling and grouting was not a work of construction, nor the creating of anything new. It consisted (a) in drilling through the overburden so as to intercept the cavities in the soil overburden wherever they existed between the bedrock and the plant floor and (b) in filling the cavities with a low ratio cement grout by forcing the grout down through the drill holes. As the cavities were irregular in shape and location and sometimes interconnected under ground, no regular grout structure resulted. No effort was made to fill the possibly age-old and illimitable cavities in the bedrock; on the contrary, the.program was designed to prevent that from happening and to limit itself to filling the cavities in the soil overburden which had occurred through the washing away of the soil during the period petitioner’s plant was in operation. While the amount of grout introduced was large, it by no means represented a large percentage of the tremendous cube of earth standing between the plant floor and the bedrock, which lay at an average depth of over 50 feet below the plant floor. The work could not successfully have been of smaller scope. Drilling on a close pattern and grouting wherever and to the extent that the soil would accept grout was essential to prevent floor failures like that of June 9, 1941,, because that cave-in demonstrated that until all cavities of any size had been intercepted and grouted there could be no assurance that all areas of incipient failure had been eliminated. In connection with the effect of the work, the accomplishment of what was done forestalled imminent disaster and gave petitioner some assurance that major cave-ins would not occur in the future, provided the fluid carrier system was kept free of even the normal amount of leakage permissible in ordinary industrial establishments.- All storm and surface waters were drained away from the plant. Any detection of settlement was promptly followed by drilling and grouting the situs of the settlement, and any material leakage was promptly repaired and the situs of the leakage checked for the presence of evidences of settlement. We think a consideration of the above factors, which are more fully set out in our findings, shows that the expenditures in question fall into the “expense” class rather than the “capital” class. The original geological defect has not been cured; rather, its intermediate consequences have been dealt with. The required continuance of the three-fold inspection program and the requirement that even normal leakage be kept from the plant site show that the original defect still exists and that plant operation has had to be modified to take account of the continued existence of that original defect. One of the leading cases in the field of what are capital expenditures and what are business expenses is Illinois Merchants Trust Co., Executor, 4 B. T. A. 103; acquiesced in, 2 C. B. 2. That case has been often cited and approved. In that case the taxpayer owned a warehouse resting on wooden piles. During the taxable year unprece-dently low water exposed parts of the piles usually under water. Dry rot set in and the warehouse began to settle so badly as to threaten collapse. To prevent a total loss and halt this accelerated deterioration, the taxpayer had all piles sawed off below the low water mark and installed concrete sections between the stumps of the piles and the bottom of the building. Much of the floor was removed in the process and one exterior wall was considerably shored up. It was held in that case that the expenditures there involved were not "for permanent betterments and improvements, but were repairs and deductible as ordinary and necessary business expenses. For similar holdings see Yakima Hop Co., 8 B. T. A. 441; John A. Schmid, 10 B. T. A. 1152; Tampa Electric Co., 12 B. T. A. 1002; Zimmern v. Commissioner, 28 Fed. (2d) 769, reversing 9 B. T. A. 1382; and Buckland v. United States, 66 Fed. Supp. 681. In the Buckland case, supra, the cost of stopping leaks in the walls and roof of a factory building within 16 months of. its purchase was held deductible as a repair expense and was not a capital expenditure, even though amounting to 35 per cent of the value of the building, where such repairs enabled a continuation of the existing use of the building by taxpayer’s tenants. Notwithstanding the high cost, it was found that the nature of the work was the restoration of a damaged fabric not extending to the replacement of any sizeable unit of the building and conformed closely to the Board’s definition of repairs in Illinois Merchants Trust Co., Executor, supra. In the Buckland case the court, among other things, said: The Tax Court or its predecessor has in a number of cases, allowed work of substantial cost to be classified as repairs if the property was not placed in better condition or given a longer life expectancy than when originally constructed. [Citing cases.] It has allowed such work to be classified as repairs even though other work classified as additions or improvements was undertaken at the same time. [Citing cases.] It has frequently denied the deduction when the work was undertaken In conjunction with alterations, additions or improvements either because the “repáir” items were not clearly segregated from the cost of the improvements [citing cases], or because the repairs were part of a general plan of reconditioning, improving and altering the property as a whole, and were therefore lumped by the Board with the other expenditures as capital. [Citing cases.] In the case at bar we have a restoration of damaged fabric, not extending to the replacement of any sizeable unit. In spite of the high cost of the work, the nature of the work fits closely the Board’s definition of repair in Appeal of Illinois Merchants’ Trust Co. 4 B. T. A. 103. ******* Defendant’s [U. S.] contention appears to be that repairs are only those mend-ings of the fabric which recur year by year. This is not consistent with the meaning given “ordinary and necessary” in Welch v. Helvering, Commissioner, 290 U. S. 111. The work done at the instance of the taxpayer was a normal response to the need developed in the course of stopping the leaks in the walls and roof of the factory building, to enable the continuation of the existing use of the building by the taxpayer’s tenants. We make a holding similar to the above in the instant case. The respondent, in support of his contention that the expenditures in question were capital in their nature, has cited and discussed a number of cases. We have examined the cases relied upon by the respondent and have found no case wherein the facts and circumstances may be said to parallel the facts and circumstances of the instant case to such a degree as to require a holding different from what we have made. We, therefore, hold that the expenditures in question were ordinary and necéssary business expenses rather than capital expenditures and should be allowed as deductions in the respective taxable years, 1941 and 1942. We turn now to petitioner’s assignment of error (b), set out in our' opening statement. Under this issue petitioner contends that upon the occurrence of the June 9,1941, cave-in it sustained a loss deductible under section 23 (f) of the-Internal Revenue Code in the amount of $2,708,000. This amount is based upon a long, detailed appraisal made by W. V. Burnell, vice president of Stone & Webster, on or about April 15, 1944, and Burnell’s testimony at the hearing. Briefly, the amount of $2,708,000 was arrived at in the appraisal as follows: Net value June 9, 1941, prior to casualty_$6,558,000 Less fair market value immediately after casualty of June 9,1941_ 3, 850,000 Amount of loss claimed- 2,708,000 In its returns petitioner did not claim any loss by reason of the June 9,1941, cave-in. It merely deducted as ordinary and necessary business expenses the expenditures for drilling and grouting. The disallowance of such expenditures as deductions is the principal reason for the deficiencies. After petitioner filed its returns it filed claims for refund in which it claimed it was entitled to a deduction for a loss in 1941 of $2,708,000 in addition to the deductions as expenses of the expenditures for drilling and grouting. The respondent rejected the claims and determined the deficiencies here contested. Petitioner’s assignments of error (a), (b), and (c) are all made independent of each other, and in its prayers for relief petitioner prays that this Court find that there are no deficiencies and that there are overpay-ments in the amounts set out in our opening statement. Notwithstanding the independence of the assignments of error and the prayers for relief, counsel for petitioner, in his opening statement, said: Now, I say alternatively, that if the government may, by some mischance, succeed in convincing the Court that these [expenditures of $734,316.76 and $199,-154.33] are not ordinary and necessary expenses, then obviously in the year 1941 this company suffered a loss, a loss which we say, if you had to measure it in dollars, would be the sum of $2,700,000. In its brief petitioner argued two points: (I) “The Petitioner Incurred a Deductible Loss of $2,708,000 on June 9, 1941,” and (II) “The Amounts Expended in Prosecuting the Drilling and Grouting Program Are Deductible as Ordinary and Necessary Business Expense.” Although these points are argued independently, petitioner in its brief states its ultimate conclusion as follows: The amounts which the taxpayer expended in 1941 and 1942 as set forth in paragraph 85 [being the amounts of $734,316.76 and $199,154.33] of the Statement of Facts are deductible under Section 23 (a) (1) (A) as ordinary and necessary expenses incurred in carrying on the petitioner’s trade or business. If, however, those amounts are held not to be deductible, then we submit that upon the occurrence of the June 9, 1941 cave-in the petitioner necessarily sustained a loss deductible under Section 23 (f) and in the amount of $2,708,000. Irrespective of the fact that assignment of error (b) was not made as an alternative to assignments (a) and (c), and irrespective of the prayers for relief, we regard the above quoted portion of the opening statement and the ultimate conclusion stated in petitioner’s brief as waiving assignment of error (b) in the event we allow the expenditures of $734,316.76 and $199,154.33 as deductions from gross income in 1941 and 1942, respectively. Under assignments of error (a) and (c), we held the said amounts to be deductible as ordinary and necessary business expenses. We, therefore, regard assignment of error (b) as having been waived and we do not decide it. We turn now to petitioner’s assignments of error (d) and (e), set out in our opening statement. No evidence or argument was offered as to these assignments. If any automatic adjustments are to be made in the recomputation of petitioner’s tax liabilities for the years in question along the line mentioned in these assignments of error, they should'be made under Eule 50. Eeviewed by the Court. Decision will be entered under Rule 50. Disney, /., concurs only in the result. SEC. 23. DEDUCTIONS FROM GROSS INCOME. In computing net income there shall be allowed as deductions: (a) Expenses.— (1) Trade oe business expenses.— (A) In General. — All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business * * * SBC. 24. ITEMS NOT DEDUCTIBLE. (a) General Rule. — In computing net income no deduction shall in any case be allowed in respect oí— • * * • • • * * (2) Any amount paid out for new buildings or for permanent improvements or better-ments made to increase the value of any property or estate; (3) Any amount expended in restoring property or in making good the exhaustion thereof for which an allowance is or has been made. Sec. 29.23(a)-1. Business ExPENsss.^-Business expenses deductible from gross income include the ordinary and necessary expenditures directly connected with or pertaining to the taxpayer's trade or business, except the classes of items which are deductible under sections 23 (b) to 23 (z), inclusive, and the regulations thereunder. Double deductions are not permitted. Amounts deducted under one provision of the Internal Revenue Code cannot again be deducted under any other provision thereof. * * * Among the items included in business expenses are management expenses, commissions (but see section 29.24-2), labor, supplies, incidental repairs, * * * [[Image here]] Sec. 29.28 (a)-4. Repairs. — The cost of incidental repairs which neither materially add to the value of the property nor appreciably prolong its life, but keep it in an ordinarily efficient operating condition, may be deducted as expense, provided the plant or property account is not increased by the amount of such expenditures. Repairs in the nature of replacements, to the extent that they arrest deterioration and appreciably prolong the life of the property, should be charged against the depreciation reserve if such account is kept. (See sections 29.23 (1)-1 to 29.23 (1)-10, inclusive.) • * * * * * * Sec. 29.24-2. Capital Expbndituees. — Amounts paid for increasing the capital value or for making good the depreciation (for which a deduction has been made) of property are not deductible from gross income. (See section 23 (1).) * * *